IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

COBY TOWNSEND HURST                                         PLAINTIFF

NO. 10-5127

1ST DISCOUNT BROKERAGE, INC.,
RIDGE CLEARING & OUTSOURCING
SOLUTIONS, INC., BILL CRAFT, AND
RAY ROGERS                                                 DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Now before the Court is the Motion to Dismiss Second Amended Complaint or Alternatively, Motion to Compel Arbitration, filed by Defendants 1st Discount Brokerage, Inc.(1st Discount), Ridge Clearing & Outsourcing Solutions, Inc. and Ray Rogers (hereinafter referred to as "Defendants").  (Doc. 77).  Defendant Bill Craft, who proceeds pro se, also filed a Motion to Dismiss.  (Doc. 75).  Although Bill Craft's motion asserts different reasons for dismissal, the reasons set forth in this Report and Recommendation also apply to the claims against Defendant Craft, since it is not disputed that he is an agent of 1st Discount, and as such, is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound.  Nitro Distributing, Inc. v. Aticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006), citing Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993). Both motions have been referred to the undersigned, and the matters are now ripe for determination.

### I.    Plaintiff's Second Amended Complaint

In his Second Amended Complaint, Plaintiff, Coby Townsend Hurst, brings an action

-1-

AO72A
(Rev. 8/82)

against Defendants pursuant to the Federal Securities and Exchange Act, 15 U.S.C. § 78, et seq. (Doc. 72). Plaintiff contends that in January of 2005, he met with his father, Jimmy B. Hurst, and Defendants Ray Rogers and Bill Craft, who were then acting as licensed brokers/agents and working as account managers for 1st Discount, and associated with Ridge Clearing & Outsourcing Solutions, Inc.  According to Plaintiff, during this meeting, Jimmy B. Hurst executed a Transfer on Death (TOD) agreement, naming Plaintiff and Linda Sue Hurst as transferees in the agreement for certain stock held under Defendants' brokerage.  Plaintiff contends that at said meeting, Jimmy B. Hurst gave express instruction that all of his stock in SLS International, Inc. would transfer to Plaintiff and Linda Hurst equally upon Jimmy B. Hurst's death.   Plaintiff contends that the TOD agreement clearly stated that it superceded all prior like authorizations, and therefore, any prior agreement by which Jimmy B. Hurst conveyed his interest to Plaintiff's brother, Cass Hurst, was superceded by the new agreement.

Plaintiff next contends that on August 5, 2005, Jimmy B. Hurst died, and that on August 8, 2005, Plaintiff instructed Defendant Craft to liquidate all of the SLS International, Inc. stock, then valued at $430,000, to him, or at the very least, his one-half interest in said shares.  Plaintiff alleges that Defendant Craft advised him that they needed to wait until his brother Cass was contacted.  Plaintiff alleges that in September of 2005, he contacted Defendant Rogers regarding the liquidation of the stock, and that Rogers assured Plaintiff he would receive the money as soon as the concerns regarding Plaintiff's brother were cleared up between the Defendants.  Plaintiff further alleges that in October of 2005, Defendant 1st Discount initiated the transfer of the stock, but that the shares were not liquidated until 2007, at which time Plaintiff's interest in the shares decreased in value from $215,000 to $40,000.

As a result of the loss, Plaintiff now brings this suit against Defendants, alleging violation of 15 U.S.C. § 78, et seq., and asserting claims based upon breach of contract, conversion, fraud, and negligence.

## II.      Motion to Dismiss or Alternatively, Motion to Stay Pending Arbitration

In their motion, Defendants argue that the Customer Account Agreement entered into between Jimmy B. Hurst and 1st Discount, as well as one entered into between Coby T. Hurst and 1st Discount, contain arbitration clauses which require this matter to proceed to arbitration, and thus, this matter should be dismissed and sent to arbitration.  Alternatively, Defendants ask the Court to stay these proceedings, pending arbitration of this matter.

## III.     The Agreements

### 1. Customer Account Agreement executed by Jimmy B. Hurst ("Plaintiff's Father's Agreement):

The first agreement is the Customer Account Agreement executed by Jimmy B. Hurst on October 19, 2004, when he opened an account with 1st Discount.

**Paragraph 7** of Plaintiff's Father's Agreement provides:

I agree that this Agreement shall inure to the benefit of my successors-in-interest, beneficiaries, shareholders, and assigns, and shall be binding on myself, my shareholders, heirs, successors-in-interest, beneficiaries, executors, administrators and assigns, and shall be governed by the laws of the State of New York.

**Paragraph 11** of Plaintiff's Father's Agreement provides, in pertinent part:

I warrant my understanding to the following Arbitration Clause terms:
(a)  Arbitration is final and binding on the parties.
(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.
(c) Pre-arbitration discovery is generally more limited than, and different from, court proceedings.
(d) The arbitrators' award is not required to include factual findings or legal reasoning,

-3-

and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
. . .
The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including, but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this Agreement shall be conducted before the New York Stock Exchange, Inc. ("NYSE") or the National Association of Securities Dealers ("NASD"), and in accordance with its Rules then in force. I may elect in the first instance whether arbitration shall be conducted before the NYSE or the NASD, but if I fail to make such election by registered letter or telegram addressed to you at your main office before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.

In addition, immediately above the signature line of the agreement is a paragraph which

reads, in pertinent part:

Under penalty of perjury, I certify the following:. . . 4. That I am agreeing to arbitrate any controversies which may arise between us.

**2.   Transfer on Death (TOD) agreement executed by Jimmy B. Hurst (TOD Agreement);**

On January 6, 2005, Jimmy B. Hurst executed the TOD agreement, the relevant portion

of which provides:

Please consider this instrument my express request and authorization to establish or change the above-referenced account as a Transfer on Death (TOD) account, which shall supersede all prior like authorization. I understand that upon presentation of a certified copy of my death certificate, all assets held in the above-referenced account will be passed directly on to the individual(s) named as transferee(s) on the following page, pursuant to the following schedule: ( ) in whole: or ( ) to be divided equally between the ___ transferees. Note that upon said transfer, the named transferee(s) will have complete discretion with regards to said assets.

-4-

**3.  Customer Account Agreement executed by Plaintiff (Plaintiff's Agreement):**[1]

In May of 2005, Plaintiff Coby Hurst executed a Customer Account Agreement, when he opened an account with 1st Discount.

**Paragraph 7** of Plaintiff's Agreement provides:

I agree that this Agreement shall inure to the benefit of my successors-in-interest, beneficiaries, executors, administrators and assigns, and shall be governed by the State of New York.

**Paragraph 11** of Plaintiff's Agreement provides:

This agreement contains a predispute arbitration clause.  By signing an arbitration agreement the parties agree as follows:
(a) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
(b) Arbitration contracts are generally final and binding: a party's ability to have a court reverse or modify an arbitration award is very limited.
(c) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
(d) The arbitrators do not have to explain the reason(s) for their award.
(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
(f) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration.  In some cases, a claim that is ineligible for arbitration may be brought in court.
(g) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.
The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.  Any arbitration under this Agreement shall be conducted before the New York Stock Exchange, Inc. ("NYSE") or the National

[1]Since the agreement initially provided by Defendants had portions of sentences that were cut off when copies were made, Defendants provided the Court with an Affidavit of Yulia Kalk, Compliance Director of 1st Discount Brokerage, Inc. and attached to it was  a complete printed form of the Customer Account Agreement used during the time period  when Coby Townsend Hurst opened his account.  Plaintiff did not raise any objection thereto, and the Court will therefore allow the agreement attached to the Affidavit to be used when referencing Plaintiff's Agreement.

Association of Securities Dealers ("NASD"), and in accordance with its Rules then in force.  I may elect in the first instance whether arbitration shall be conducted before the NYSE or the NASD, but if I fail to make such election by registered letter or telegram addressed to you at your main office before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.

## IV.    The positions of the parties

In their motion, Defendants contend that upon Jimmy B. Hurst's death, Plaintiff became an heir, successor-in interest, and beneficiary of Jimmy B. Hurst's account, and, pursuant to the arbitration clause in Jimmy B. Hurst's Agreement, Plaintiff's claims must be arbitrated. Defendants also contend that the arbitration clause contained in Plaintiff's Agreement likewise requires Plaintiff's claims to be arbitrated, since it encompasses "all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof."  Defendants argue that the validity, enforceability, and construction of an agreement which contains a predispute arbitration clause, as in the case now before the Court, are issues to be decided by the arbitrator, referring to the recent United States Supreme Court case of Rent-A-Center, West, Inc. V. Jackson, 130 S.Ct. 2772 (2010).  (Doc. 78 at p. 8).

Plaintiff argues that the arbitration clauses in the agreements are ambiguous, in that they do not state how arbitration is to take place, how to initiate arbitration, to whom notice is to be given, or how notice of intent to arbitrate is to be performed.  He further argues that the arbitration clauses are buried in a paragraph after several lines of text stating who is not entitled to arbitrate. The Court construes this argument to be one of unconscionability.  Plaintiff also

-6-

argues that the "contract" does not provide for any consideration, in that Jimmy B. Hurst "deposited funds with said company, and said company then took a fee, no real benefit was inured to the deceased." (Doc. 80 at p. 3). Finally, Plaintiff argues that paragraphs three of the agreements allow Defendants to place an automatic lien on the deceased's account without any notice in order to secure payment of fees, and that the deceased did not have any automatic lien on Defendant's property giving it protections in the event of a breach of contract. Thus, Plaintiff argues, there "was no mutuality of agreement or obligation in this contract..." (Doc. 80 at p. 3).

In Plaintiff's Father's Agreement, there is a provision stating that the agreement shall be governed "by the laws of the State of New York." (Par. 7 of Plaintiff's Father's Agreement). In Plaintiff's Agreement, there is a provision that states that the agreement "shall be governed by the State of New York." (Par. 7 of Plaintiff's Agreement). The Court previously instructed the parties by Order that New York law applied in this case, and asked them to further brief the issues, applying New York law. (Doc. 92).

## V.    Applicable Law:

When deciding whether to compel arbitration, "a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement." Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC, 641 F.3d 263, 266 (8th Cir. 2011).

The Federal Arbitration Act (FAA) governs contracts involving interstate commerce. Hudson v. Conagra Poultry Company, 484 F.3d 496, 599 (8th Cir. 2007). An agreement between a brokerage firm and a former employee was held to involve interstate commerce. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro, 577 F.Supp. 616, 619 (D.C. Mo. 1983). It is not

disputed that the FAA applies to the agreements in the present case.

The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In <u>Rent-A-Center</u>, the Supreme Court reiterated that there are two types of validity challenges under § 2: "'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" <u>Rent-A-Center</u>, 130 S.Ct. at 2778 (quoting <u>Buckeye Check Cashing, Inc.v. Cardegna</u>, 546 U.S. 440, 444 (2006)). The Supreme Court held that challenges to the validity of the contract as a whole must be determined by the arbitrator, but challenges to the arbitration clause itself must be considered by the Court. <u>Id.</u>

It was somewhat unclear from Plaintiff's response to Defendant's motion as to whether Plaintiff was challenging the enforceability of the agreements at issue as a whole or whether he was challenging only the arbitration clauses contained therein. In a telephonic hearing held on August 3, 2011, Plaintiff advised the Court that he was challenging only the enforceability of the arbitration clauses. Thus, the Court will construe Plaintiff's arguments summarized above as pertaining only to the enforceability of the arbitration clauses. That being the case, this Court - and not the arbitrator - must decide the issue of enforceability.

State law is applied to determine whether an arbitration agreement is valid and enforceable. <u>Donaldson Co. Inc. V. Burroughs Diesel, Inc.</u> 581 F.3d 726, 731 (8th Cir. 2009), <u>cert. dismissed</u>, 130 S.Ct. 2088 (2010). Ordinary state law contract principles are applied to

-8-

decide whether parties have agreed to arbitrate a particular matter, "'giving healthy regard for the federal policy favoring arbitration.'" Liberty Mut.Ins.Co. v. Mandaree Public School, 503 F.3d 709, 711 (8th Cir. 2007) (quoting AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 780 (8th Cir. 2001)).

## VI.   Discussion

### A.  Choice-of-Law Provision

Although this case is brought under a federal statute, the parties are generally free to structure their arbitration agreement as they see fit, which extends to choice-of-law provisions governing the agreement.  Gay v. Creditform, 511 F.3d 369, 388-89. (3rd Cir. 2007).

Plaintiff contends that the choice-of-law provisions are ambiguous and therefore Arkansas law applies, arguing that within the agreements "are three separate paragraphs which could be interpreted as choice of law clauses."

> First, Paragraph 2 of the agreement states, "all transactions for this account shall be subject to the Constitution, rules, regulations, customs and usages of the exchange or market (and its clearinghouse, if any) where executed.  Second Paragraph 7 of the agreement states, "I agree that this agreement shall nurture [sic] the benefits of my successors in interest, beneficiaries, shareholders, and assigns, and shall be binding on myself, my shareholders, heirs, successors in interest, beneficiaries, executors, administrators and assigns, and shall be governed by the laws of the state of New York. Third, Paragraph 11 of the agreement states, "...Any arbitration under this agreement shall be conducted before the New York Stock Exchange, Inc. Or the National Association of Securities Dealers, Inc., and in accordance with its rules then in force."

(Doc. 85 at p. 2).

The Court sees no merit to Plaintiff's argument that Paragraphs 2 and 11 of the agreements could be interpreted as choice-of-law clauses, as these paragraphs do not relate to the substantive law to be applied to the contract.  Paragraph 2 relates to the customer's agreement that the rules of any clearing house or exchange that handles any transaction in the customer's

-9-

account will apply to those transactions.  The term "where executed" relates to where the transaction, i.e. trades are executed, not where the contract was executed.  Paragraph 11 designates the forum where the arbitration is to take place, and the procedural rules to be applied in that proceeding.  The Court finds that the choice-of-law provision in the agreements is not ambiguous, and when the parties have selected a choice-of-law, Arkansas courts will honor a choice-of-law provision, "provided that the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state."  Guardian Fiberglass, Inc. V. Whit Davis Lumber Co., 509 F.3d 512, 515 (8th Cir. 2007) (citation omitted).

In the present case, the contract of the parties relates to a securities account maintained by the Plaintiff;  Defendant, 1st Discount is a licensed broker and the other Defendant, Ridge Clearing & Outsourcing, Inc. is a clearing house with offices in New York, each of which engages in trading of securities through exchanges located in New York, and is governed by rules and regulations of organizations located in New York, e.g. the New York Stock Exchange.  The Court believes, and Plaintiff has not convinced the Court otherwise, that New York law is reasonably related to the transactions in question and does not violate a fundamental public policy of the Arkansas.

**B.  Whether a valid agreement to arbitrate exists:**

**1.  Whether the arbitration clauses are ambiguous:**

Plaintiff argues that the arbitration language does not state how arbitration is to take place, how to initiate arbitration, to whom notice is to be given, or how notice of intent to arbitrate is to be performed.  However, Plaintiff does not contend that the arbitration language itself is ambiguous.  Nor does he set forth any facts to support an argument that Plaintiff's father

-10-

failed to understand the arbitration language.  Plaintiff does not cite to any case law in support of his argument.

"Under New York law, a contract is ambiguous if the terms could suggest more than one meaning when viewed objectively by a reasonably  intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Sarinsky's Garage, Inc. v. Erie Ins. Co., 691 F.Supp.2d 483, 486 (S.D.N.Y. 2010).

The Court does not believe that the language in either Plaintiff's Agreement or Plaintiff's Father's Agreement is fairly susceptible to more than one reasonable interpretation, or that the deceased and Plaintiff could not have understood their rights or responsibilities.  The arbitration clauses are clear and unambiguous, and, as stated by Defendants, if a dispute did arise, all a customer had to do was to contact NYSE or the successor to NASD, which is Financial Industry Regulation Authority (FINRA) to obtain a copy of the rules then in force.

## 2.  Whether the arbitration clauses are unconscionable

In support of this argument, Plaintiff merely states that the arbitration language is buried and that the "average consumer would have little hope to understand."  In Sablosky v. Gordon Co., Inc., 73 N.Y. 2d 133,139 (1989), the court held:

> The doctrine of unconscionability contains both substantive and procedural aspects, and whether a contract or clause is unconscionable is to be decided by the court against the background of the contract's commercial setting, purpose and effect. (citation omitted).  Substantively, courts consider whether one or more key terms are unreasonably favorable to one party (citation omitted).  There is no general test for measuring the reasonableness of a transaction but we have recently provided this guidance: "[a]n unconscionable contract [is] one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" (citations omitted).

-11-

Id. at 138; see also Simar Holding Corp. v. GSC, 928 N.Y.S.2d 592 (2011)(holding that the procedural element of unconscionability "concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." quoting State of New York v. Wolowitz, 468 N.Y.S.2d 131(1983)).

In the present case, as to procedural unconscionability, there is no indication that Plaintiff or his father did not have the opportunity to read the arbitration provisions, which were just as prominent as the language in the rest of the contract.   Furthermore, in Plaintiff's Father's Agreement, there is language at the bottom of the page where he certifies, under penalty of perjury, "that I am agreeing to arbitrate any controversies which may arise between us."

As to substantive unconscionability, requiring the Court to look to the actual terms of the contract to see if they are one-sided, the Court believes that the arbitration clauses in the present case are not substantively unconscionable. Plaintiff's Father's Agreement contains the language: "The parties are waiving their right to seek remedies in court, including the right to jury trial." Plaintiff's Agreement contains the language: "All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed."   The terms are clearly not one-sided.   Both sides have agreed to submit disputes to arbitration.   The Court finds that the arbitration clauses are not unconscionable.

### 3.  Lack of Consideration and Mutuality

Plaintiff originally argued that the contract did not provide for any consideration, that paragraph three of the agreement allowed Defendants to place an automatic lien on the accounts without any notice in order to secure payment of fees, and that the deceased did not have any

AO72A
(Rev. 8/82)

automatic lien on Defendant's property giving it protections in the event of a breach of contract.

Plaintiff does not elaborate on his argument that the contract does not provide for any

consideration.  He merely states: "The deceased deposited funds with said company, and said

company then took a fee, no real benefit was inured to the deceased."  (Doc. 80 at p. 3).  To the

extent that Plaintiff is contending there is lack of consideration in the arbitration clause, it is clear

that each party is giving up his right to pursue remedies in court and is agreeing to arbitrate.  "An

employer's promise to arbitrate in exchange for an employee's promise to do the same constitutes

sufficient consideration to support the arbitration agreement." <u>Tinder v. Pinkerton Security</u>, 305

F.3d 728, 734 (7th Cir. 2002), citing <u>Michalski v. Circuit City Stores, Inc.</u>, 177 F.3d 634, 636 (7th

Cir. 1999).  Therefore, Plaintiff's argument in this regard is without merit.

      To the extent that Plaintiff originally argued that there was no mutuality, when asked to

brief this issue under New York law, Plaintiff conceded that pursuant to <u>Sablosky v. Edward S.

Gordon Co.,</u> 73 N.Y. 2d 133 (1989), his mutuality argument fails.

> Mutuality of remedy is not required in arbitration contracts.  If there is consideration for
> the entire agreement that is sufficient; the consideration supports the arbitration option,
> as it does every other obligation in the agreement.  Our holding is consistent with
> decisions which have repudiated the necessity for mutuality of remedy in contracts.

<u>Id.</u> at 137 (citations omitted).   The Court finds that Plaintiff's arguments relating to lack of

consideration and mutuality fail.

### C.  Whether the Arbitration Clauses Encompass the Dispute

      The next question is whether the arbitration clauses encompass the dispute in the present

case.  The arbitration clauses of both Plaintiff's Agreement and Plaintiff's Father's Agreement

state that:

> The undersigned agrees, and by carrying an account of the undersigned you agree,  that

-13-

all controversies which may arise between us, including, but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. ....

In Simmons Foods, Inc. V. Mahmood J. Al-Bunnia & Sons Co., 634 F.3d 466 (8th Cir. 2011), the Eighth Circuit stated that an order to arbitrate the particular grievance "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 468-469; see also Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 798-99 (8th Cir. 2004), quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)("The Federal Arbitration Act (FAA), 9 U.S.C. § § 1-16, established 'a liberal federal policy favoring arbitration agreements.'"). "Whether a particular type of grievance is within the parties' agreement to arbitrate is the court's responsibility to decide, unless clearly and explicitly reserved for an arbitrator." Local 38N Graphic Communications Conference/IBT v. St. Louis Post-Dispatch, LLC, 638 F.3d 824, 827 (8th Cir. 2011).

In Chen-Oster, the court recognized that given the preference for arbitration embodied in the FAA and Supreme Court case law, "federal courts construe arbitration clauses broadly and apply a 'presumption of arbitrability.'" Id., 2011 WL 1795297 at *4. "Where an arbitration clause is broad, 'there is a presumption that the claims are arbitrable.'" Simply Fit of North America, Inc. v. Poyner, 579 F.Supp.2d 371, 377-78 (E.D.N.Y. 2008) (citation omitted).  In the present case, the language in the arbitration clauses is clear, broad and unambiguous - "all controversies which may arise between us,...shall be determined by arbitration."  Thus, the Court believes the present case clearly falls within the scope of the arbitration agreement.

-14-

**VII.    Conclusion:**

The Court believes that based upon the applicable law as applied to the facts in this case, the claims are subject to arbitration for the following reasons:

1. Plaintiff's Father's Agreement contains a broad arbitration agreement that encompasses the claims before the Court and, since Plaintiff is an heir, successor-in-interest, and beneficiary under his father's agreement, as well as a transferee under the TOD Agreement, Plaintiff is bound by the arbitration agreement.

2. Plaintiff's Agreement contains a valid and enforceable, broad, arbitration agreement which encompasses his claims against Defendants.

Accordingly, the Court recommends that this matter be stayed pending arbitration, and administratively terminated. <u>See</u> 9 U.S.C. § 3 (stating district courts "shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 4th day of October, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)